HENRY FARRELL vs. THE WINCHESTER AVENUE RAIL-
ROAD COMPANY AND OTHERS.

New Haven & Fairfield Cos., June T., 1891. ANDREWS, C. J., CARPEN-
TER, SEYMOUR, TORRANCE and FENN, Js.

It is provided by Gen Statutes, § 3595, that the mayor and common council
of any city may permit and regulate the use of any improved motive
power for drawing cars on any horse railroad in the city. Subsequently
to the passage of this act a company was incorporated with power to
construct and use a horse railroad in certain streets of the city of New
Haven, the charter containing the following provision:—"Said company
is authorized to operate such railroad with cars propelled by electricity
in any mode that does not involve the use of overhead wires." Held
that the company could not use overhead wires, even with the permis-
sion of the mayor and common council of the city.
The charter of the company was the full measure of its powers.
The exception in the charter of the use of overhead wires in the granting
of its powers, was equivalent to a positive prohibition of their use.

[Argued June 3d—decided September 12th 1891.]

SUIT for an injunction against the use by the defendant
horse railroad company of overhead wires in propelling its
cars by electricity, and against the granting permission so to
do by the mayor and common council of the city of New
Haven; brought to the Superior Court in New Haven
County, and reserved, on demurrers to the complaint, for
the advice of this court. The case is fully stated in the
opinion.

*G. W. Robinson* and *W. Trumbull*, for the plaintiff.

*C. T. Driscoll*, for the Mayor and Common Council of the
city.

*J. Sheldon* and *T. H. Russell*, for the Winchester Avenue
Railroad Company.

CARPENTER, J. Section 3595 of the General Statutes

reads as follows :—" The use of any improved motive power for drawing passenger cars on any horse railroad other than that furnished by locomotives, dummies, or box engines used on steam railroads, may be permitted and regulated in any city by the mayor and common council, in any borough by the warden and burgesses, and in any part of a town not included in any city or borough, by the selectmen, subject to revocation by the authority granting the same and by a two-thirds vote of its members."

Section first of the defendant's charter, (10 Special Laws, 1224,) provides as follows :—" Said company is hereby vested with all the powers and immunities which are or may be necessary to carry into effect the purposes and objects of this resolution, and said company is hereby authorized and empowered to locate, construct and operate such railroad with cars propelled by electricity, in any mode that does not involve the use of overhead wires, or by animal power, as they shall deem advisable, upon and along the following streets," etc., naming them and including Winchester Avenue.

The complaint alleges that the defendant has petitioned the mayor and common council of the city of New Haven for permission to use cars propelled by electricity by means of overhead wires, that the mayor and common council are about to grant the petition, and that the operation of the road by such overhead wires will cause irreparable damage to the property of the petitioner. The relief prayed for is an injunction restraining the city from granting the petition, and the railroad company from constructing or erecting any poles or wires for the purpose of operating its cars by means of overhead wires.

The complaint is demurred to, because—" 1st. It does not allege that the defendant intends or threatens to use said overhead wires, or to erect poles for the same, without permission of the mayor and common council; and 2d. that the mayor and common council have full power to permit such use by the defendant under the provision of section 3595 of the Revised Statutes, and that such power is not

taken away or affected in any way by the provisions of the charter of the defendant."

The city of New Haven, also a defendant, demurred to the complaint because it is empowered by section 3595 of the statutes to permit all horse railroad companies, including the Winchester Avenue Railroad Company, to use electricity by means of overhead wires," etc.    The case is reserved for the advice of this court.

The case is argued on the briefs as though only a single question was presented by the court:—namely, does the charter repeal section 3595 of the General Statutes so as to prevent its application to the Winchester Avenue Railroad Company?    It does not seem to us that this is the whole question, or quite the proper one.    The real question is not one of repeal, but what powers may the railroad company exercise under its charter?    Not what may the mayor and council grant, but what may the railroad company take?    The charter of the railroad company is the full measure of the powers which it possesses.    It cannot lawfully exercise any others.    In ordinary cases every corporation is just what the incorporating act has made it, and is capable of exerting its faculties only in the manner the act authorizes.    That charter was granted subsequent to the enactment of the section in the General Statutes.    It would have been competent to the legislature to grant to that company the right to exercise other powers than such as by the quoted section could be granted by the mayor and common council of the city.    It was equally within the power of the legislature to forbid the company to use electricity in a way which, under other circumstances, might have been given by the mayor and council.    Suppose the charter had contained express words of prohibition, as—" said company is forbidden to use electricity in any way that involves the use of overhead wires."    It would be admitted that the mayor and council could not then confer upon the company the right to use electricity in that way.    It cannot be claimed that the mayor and common council of a city could give to a corporation

VOL. LXI.—9

the right to exercise a power which the legislature had expressly forbidden it to exercise.

But the exception in the charter of the right to use electricity in any way that involved the use of overhead wires makes the legal effect of the charter precisely the same that it would have been had such express words of prohibition been contained in it. In all statutes granting powers to a corporation or to an individual or to a body, things not enumerated in the grant, or excepted out of it, are held to be as distinctly negatived as though there were express words of negation. Endlich on Interpretation of Statutes, § 354; Sutherland on Statutes, § 327; Sedgwick on Statutory Construction, 354. Thus in *Durousseau* v. *The United States*, 6 Cranch, 307, a statute of the United States had conferred appellate jurisdiction on the Supreme Court in certain enumerated cases, and it was held that that statute implied a negative on the exercise of appellate powers by the Supreme Court in all cases not comprehended within the enumeration. The National Banking Act empowers a national bank " to carry on the business of banking, by loaning money on *personal* security." It was held in *Fowler* v. *Scully*, 72 Penn. St., 456, that this act prohibited the loaning of money on the security of real estate, and that a mortgage given to a national bank as security for money so loaned was void. To the same effect are *Page* v. *Allen*, 58 Penn. St., 338; *Fridley* v. *Bowen*, 8 Ill., 151; *Ex parte McCardle*, 7 Wall., 506. " In so far as the rights granted to corporations are destructive of or encroach upon public or common rights, they are undoubtedly to be construed most strongly against those setting them up and in favor of the state or the public; they are not to be extended beyond the express words in which they are given or their clear import; and whatever is not given in unequivocal terms is to be deemed as expressly withheld." Endlich on Interpretation of Statutes, § 354. See also *Sprague* v. *Birdsall*, 2 Cowen, 420; *Coolidge* v. *Williams*, 4 Mass., 145; *The People* v. *Broadway R. R. Co.*, 126 N. York, 29; *City of New Haven* v. *Whitney*, 36 Conn., 373; *City of Bridgeport* v. *Housatonic R. R. Co.*,

15 Conn., 501.  Construing the charter of the Winchester Avenue Railroad Company by these rules, it is apparent that it has no capacity to take the right to use electricity in any way that involves the use of overhead wires from the mayor and common council of the city of New Haven; and that the injunction should be granted.

In this opinion the other judges concurred.